16 F.3d 1229
NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
 UNITED STATES of America, Appellee,
v.
Sherman E. TODD, Appellant.
United States of America, Appellee,
v.
Limuel W. Simpson, Appellant.
 Nos. 93-2919EA, 93-2608EA.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: January 6, 1994.
Filed: January 10, 1994.
 
 Before FAGG, BOWMAN, and LOKEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 These consolidated cases arise from the undercover investigation of illegal gun and food stamp transactions at an Arkansas pawn shop owned by Limuel W. Simpson. Following his arrest, Simpson pleaded guilty to unlawful purchase of food stamps in violation of 7 U.S.C. Sec. 2024(b) and possession of an unregistered firearm in violation of 26 U.S.C. Sec. 5861(d). Sherman E. Todd, Simpson's employee, pleaded guilty to possession of an unregistered machine gun in violation of 18 U.S.C. Sec. 922(o)(1) and 26 U.S.C. Sec. 5861(d). Simpson and Todd appeal their sentences, and we affirm.
 
 
 2
 In July 1992, Special Agent Brent Beavers and informant Shirley Hunter went to Simpson's pawn shop to buy a handgun. Although Beavers presented a Louisiana driver's license and it is illegal to sell a gun to a resident of another state, Todd said Hunter, an Arkansas resident, could fill out the purchase form instead. Beavers bought a revolver. Beavers returned in August and told Simpson he was from Louisiana and wanted to buy some guns. Simpson said Hunter would have to fill out the papers. Beavers bought two pistols for about $1000 in food stamps. Simpson told Todd to help Hunter complete the paperwork. In September, Beavers told Todd he was interested in buying a machine gun that did not require papers. Todd told Beavers he knew someone with an original machine gun without papers. When Todd later produced the machine gun for sale, he was arrested. At his arrest, Todd was armed with a loaded pistol. Agents then arrested Simpson, who was armed with an unregistered derringer. The agents seized a revolver with an obliterated serial number from Todd's residence and another derringer from the pawn shop.
 
 
 3
 Todd's presentence report (PSR) recommended a base offense level of 18, a two-level increase because the offense involved five to seven firearms, a two-level increase for possessing a firearm with an obliterated serial number, and a three-level reduction for acceptance of responsibility. With a total offense level of 19 and a criminal history category of I, Todd's sentencing range was 30 to 37 months. Over Todd's objections to the PSR, the district court sentenced Todd to imprisonment for 30 months and two years of supervised release.
 
 
 4
 On appeal, Todd first argues the district court committed error in assigning a base offense level of 18 under U.S.S.G. Sec. 2K2.1(a)(5) because Todd is not a prohibited person or a convicted felon and the Guidelines do not take these circumstances into account. This argument is meritless. Section 2K2.1(a)(5) provides a base offense level of 18 if the offense involved a firearm listed in 26 U.S.C. Sec. 5845(a). Machine guns are listed in Sec. 5845(a). See U.S.S.G. Sec. 2K2.1 n. 3(ii). Indeed, Todd would have received a base offense level of at least 20 if he were a prohibited person or a convicted felon. See U.S.S.G. Sec. 2K2.1(a)(1)-(4). Todd also asserts his base offense level should be six under U.S.S.G. Sec. 2K2.1(b)(2) because he possessed the machine gun only for his collection and did not unlawfully discharge it. Section 2K2.1(b)(2) does not apply, however, when the base offense level is determined under section 2K2.1(a)(5). U.S.S.G. Sec. 2K2.1(b)(2) & n. 10.
 
 
 5
 Todd next argues he should not have received a two-level enhancement under U.S.S.G. Sec. 2K2.1(b)(4), which applies to possession of a firearm with an obliterated serial number, because he did not know the number was obliterated. Knowledge of obliteration is not a prerequisite to this enhancement, however. U.S.S.G. Sec. 2K2.1 n. 19. Finally, Todd argues the district court should not have increased his offense level under U.S.S.G. Sec. 2K2.1(b)(1)(B) for involvement of five to seven guns, because he sold some of the guns only as Simpson's employee and agent. We disagree. The Guidelines provide a defendant is accountable for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. Sec. 1B1.3(a)(1)(A). The Guidelines also provide, in the case of jointly undertaken criminal activity, a defendant is responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. Sec. 1B1.3(a)(1)(B). The testimony at sentencing showed Todd was a gun expert who knew it was illegal to allow a person to buy a gun for another person who could not legally buy one. Todd cannot escape liability by arguing he was merely Simpson's agent. Under Todd's flawed reasoning, any conspirator who was employed by another conspirator could escape liability for illegal conduct.
 
 
 6
 We now turn to Simpson's sentence. Simpson's PSR indicated a combined adjusted offense level of 15, a two-level acceptance-of-responsibility reduction, and a total offense level of 13. With a criminal history category of I, Simpson's sentencing range was 12 to 18 months. After hearing testimony at the sentencing hearing, the district court adopted the PSR and sentenced Simpson to imprisonment for 15 months and two years of supervised release. The district court also imposed a $3000 fine.
 
 
 7
 Simpson argues he should not have received a two-level increase under U.S.S.G. Sec. 2K2.1(b)(1)(B) for an offense involving five guns because he was not responsible for the revolver that Todd sold to Beavers. In our view, however, Simpson could reasonably foresee Todd's illegal sale of the revolver. See U.S.S.G. Sec. 1B1.3(a)(1)(B). Simpson illegally took food stamps for the redemption of a pawned revolver, and he was directly involved with the later sale of guns to Beavers, an out-of-state resident, who paid with food stamps. Illegal gun sales and food stamp transactions appear to have been acceptable business practice at Simpson's pawn shop, and the shop received the money from Todd's sale of the revolver to Beavers.
 
 
 8
 Accordingly, we affirm.